### EDWARDS v. LAIN.
### No. 7121.

Circuit Court of Appeals, Seventh Circuit.
April 26, 1940.

Rehearing Denied June 15, 1940.

---

Harry C. Heyl, of Peoria, Ill., Glendon C. Hodson, of Centralia, Ill., and George A. Lackey, of Lawrenceville, Ill., for appellant.

Stone & Taylor, of Bloomington, Ill., and Wham & Wham, of Centralia, Ill. (Hal M. Stone, of Bloomington, Ill., and Charles Wham, of Centralia, Ill., of counsel), for appellees.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

This is an action in equity brought by appellant, a citizen of Ohio, against appellees, citizens of Illinois, except the Sohio Corporation, which is a citizen of Delaware. It asks that appellant be declared the owner of certain interests in certain tracts of land hereinafter mentioned, and that appellees be ordered to pay him his share of the proceeds of the oil taken from the property hereinafter referred to. In aid of the action he asks for an accounting and for injunctive relief.

The case was tried by the court without a jury, and the court made special findings of fact and rendered its conclusions of law thereon. A decree was rendered adverse to appellant and in accordance with the conclusions of law, and from that decree this appeal is prosecuted.

The court in substance found the following facts: On February 14, 1938, appellant and I. D. Lain entered into a written contract, hereinafter referred to as the Wamac contract. It is in the form of a letter and acceptance, as follows:

"Centralia, Illinois.
"February 14, 1938

"Mr. I. D. Lain,
"Bloomington, Illinois.
"Dear Sir:

"I have heretofore entered into an agreement with George M. Timberlake et al, bearing date the 29th day of January A. D. 1938, with reference to oil and gas rights to certain properties located in the Village of Wamac, Marion and Clinton Counties, in the State of Illinois, and I have also entered into a like agreement with Webster Drilling Company, an Indiana Corporation, and Mabel E. Webster, bearing date the 14th day of February A. D. 1938, respecting oil and gas leases covering the property therein referred to, copies of which agreements are submitted herewith.

"I have also executed an assignment of a two-third (⅔) interest in said agreements to you, bearing even date herewith, and now it is my understanding:

"(a) That said premises in each case shall be drilled upon as therein specified.

"(b) That you are to pay the entire cost of the first well, or test well.

"(c) If said test well shall be successful, then as to all subsequent wells each of us is to pay the cost of the same proportionately to our interest therein.

"(d) That after the payment of royalties and overrides, as in said contracts provided, you shall then receive two-thirds (⅔) of the oil or gas produced from said wells and I shall receive one-third (⅓).

"(e) I further understand that as the occasion offers, we, or either of us, by mutual agreement, are to procure other leases of oil and gas rights in and about the Village of Wamac and the City of Centralia, and that such leases, if and when taken, shall be included within the terms of this memorandum and considered a part of the holdings covered thereby.

"(f) I further understand that the necessary expense of obtaining other leases, insofar as the same shall be agreed upon between us, shall, prior to the completion of a paying well, be borne by you.

"(g) It is my understanding that in the event a producing well is obtained, then I am to pay you for one-third (⅓) of the necessary expense incurred by you in connection with the procuring of said leases and agreements, including the expense of procuring the agreements with Timberlake and Webster, and the examination and com-

pletion of title, attorney fees, and expenses incident thereto.

"(h) I further understand that we shall at a later time determine whether our interests under these contracts shall be held by us in some form of partnership, or whether they shall be transferred to a corporation to be organized for that purpose.

"(i) I further understand that it is contemplated that a drilling outfit suitable for the drilling of oil wells in the territory in question may be procured by you for your own benefit, or for the benefit of us both, under an agreement which may be entered into, and in the event such a drilling outfit is so procured, then it is understood that the owner thereof shall, at his or their option, have the exclusive right to do subsequent drilling for us in this undertaking, at a price to be agreed upon per running foot.

"If the foregoing is in accordance with your understanding, will you please be good enough to indicate below.

"Very truly yours,
"(Signed) F. E. Edwards,
"Accepted:
"(Signed) I. D. Lain."

On May 3, 1938, I. D. Lain took title to a certain oil and gas lease from the Centralia Coal Company, of Illinois, covering a part of Block 75 of an addition to Centralia, Illinois, hereafter referred to as Block 75.

On May 18, 1938, Edwards and I. D. Lain entered into another agreement in writing which was written on the last page of and following the contract of February 14, 1938, as follows:

"May 18, 1938.

"Whereas, subsequent to the execution of the above agreement, I. D. Lain, one of the parties thereto, has obtained an Oil and Gas Lease on the major portion of Block 75 of the Illinois Central Railroad Company's Addition to the City of Centralia as laid out, platted and recorded by the Illinois Central Railroad Company, and is now in the process of drilling an oil well thereon.

"And Whereas, it is the desire of the parties hereto to have a definite understanding with reference to their rights and interests therein.

"Now, therefore, it is agreed by and between the said I. D. Lain and F. E. Edwards that the said I. D. Lain is and shall be the sole and exclusive owner of said

Oil and Gas Lease and any and all oil wells drilled thereon or thereunder, which are now or may be hereafter drilled thereon or thereunder, and that in lieu of any and all interests which the said F. E. Edwards may, might or could claim in and to said Lease and wells, it is agreed that he, the said F. E. Edwards, shall receive an overriding royalty of one-sixteenth ($\frac{1}{16}$) of the seven-eighths ($\frac{7}{8}$) working interest in and to all oil and gas produced and saved from any and all wells which may be drilled upon said leased premises, the same to be delivered to him free of cost in the pipe line to which said well or wells may be connected.

"(Signed:)  F. E. Edwards.  (Seal)
"(Signed:)  I. D. Lain.  (Seal)"

This agreement was carried out by delivery of an assignment of the overriding royalty to appellant.

On June 24, 1938, I. D. Lain took title, by assignment, of a lease from Toulme and wife, to a certain oil and gas lease covering a tract of 37.60 acres, more or less, in Marion County, Illinois, owned by one Dempsey, which premises are located about seven miles northeast of Centralia. For this lease Lain paid $6,000 in cash, and gave an overriding royalty of one-fourteenth of the working interest therein, to the assignors Toulme and wife. These premises are hereafter referred to as the Dempsey tract.

Thereafter, on July 14, 1938, Edwards and I. D. Lain entered into another written agreement, which was signed by them and acknowledged before a notary public. It is as follows:

"This Agreement Made and Entered Into this 14th day of July, A. D. 1938, by and between F. E. Edwards, party of the first part, and I. D. Lain, party of the second part,

"Witnesseth:

"That, Whereas, the parties hereto entered into a mutual understanding or agreement in writing under date of February 14, 1938, a copy of which is hereto attached as 'Exhibit A' for the purpose of identification.

"And, Whereas, it is now the desire of both parties to cancel said mutual understanding or agreement,

"Now, Therefore, it is agreed by and between the parties hereto as follows:

"(1) Said mutual understanding or agreement is hereby cancelled and the

same shall hereafter be of no further force or effect.

"(2) The party of the second part does hereby release the party of the first part from any and all obligations or liability for or on account of any and all moneys or other things of value advanced or paid out by the party of the second part, either to the party of the first part or to any other party or parties under or on account of said mutual understanding or agreement.

"(3) The party of the first part does hereby release the party of the second part from any liability or obligation to him on account of any services heretofore rendered by the party of the first part under or on account of said mutual understanding or agreement, or for any moneys advanced by the party of the first part under or on account thereof.

"(4) The party of the first part further agrees that he has no interest whatsoever and will claim no interest in any oil and gas lease or leases, or any oil and gas royalty or royalties which may have been purchased by the party of the second part during the life of said mutual understanding or agreement.

"(5) Nothing herein contained shall be construed as in any manner releasing or affect (sic) first party's overriding royalty of one-sixteenth (1/16) of seven-eighths (7/8ths) working interest in and to all oil and gas produced and saved from any and all wells which may be drilled upon that portion of Block 75 * * * * covered by oil and gas lease thereon, owned and held by the party of the second part. * * * *"

To this last agreement there was attached and made a part thereof a copy of the two agreements made on February 14, and May 18.

This last agreement was voluntarily entered into by the parties with full knowledge of the terms thereof. There was no fraud or misrepresentation in connection with its execution, and appellant's claim that it was procured by fraud and misrepresentation is not supported by the evidence, and the court found that it was not so procured, but that it was and is a valid instrument, binding upon the parties thereto.

On July 26, 1938, I. D. Lain took title to an oil and gas lease covering the undivided two-thirds interest to certain other land in Marion County, Illinois, known as the Hanley tract.

On September 3, 1938, I. D. Lain assigned to the Lain Oil and Gas Company, a corporation, in exchange for shares of the common stock of that corporation, the oil and gas lease upon the Dempsey tract and all his interest in the oil and gas lease taken in his name on Block 75, excepting the overriding royalty previously assigned to Edwards.

In substance the court concluded from these findings that Edwards had no interest in the lease on the Dempsey tract, nor to any of the oil and gas, which had been or might be recovered from those premises; that Edwards had no interest in any of the shares of the common capital stock of the Lain Oil and Gas Company; that Edwards had no interest in or to the oil and gas lease upon the Hanley tract; and that the defendants were entitled to an order that plaintiff take nothing by this suit and that his complaint be dismissed for want of equity. The decree followed the conclusions.

Appellant contends that the agreement of February 14, 1938, and the assignment made in connection with it constituted a mining partnership, or joint adventure, between him and the two Lains, to develop leasehold properties for oil and gas purposes, and as a result thereof a fiduciary relation existed between him and the two Lains. In this respect he further contends that this agreement, by the acts and conduct of the parties, extended to the Dempsey and Hanley tracts; and that the lease on the Dempsey tract was charged with a trust to hold it for the beneficiaries, including appellant.

It is unnecessary for us to decide whether or not this contract constituted a mining partnership or joint adventure, and we arrive at this conclusion because of the agreement entered into by appellant and I. D. Lain on July 14, 1938. It is true that appellant contends that this agreement was fraudulently obtained. However, the District Court found that it was voluntarily entered into by the parties with full knowledge of the terms thereof, and that there was no fraud nor misrepresentation in connection with its execution. Appellant, however, contends that this finding is against the weight of the evidence and he insists that the cause should be tried de novo here. In support of this contention he cites Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, 926, and cases cited, wherein it is stated that: "* * * 'in an

appeal in equity we review the facts as well as the law, and the review is a real review and not a perfunctory approval.'"

The true rule in this respect is set forth in Keller v. Potomac Company, 261 U.S. 428, 43 S.Ct. 445, 449, 67 L.Ed. 731: "* * * In that procedure [in equity], an appeal brings up the whole record and the appellate court is authorized to review the evidence and make such order or decree as the court of first instance ought to have made, giving proper weight to the findings on disputed issues of fact which should be accorded to a tribunal which heard the witnesses."

In recognition of this rule, the court in the Hoehke case, supra, used the following language: "We are thoroughly familiar with the salutary rule that in equity cases the findings of the District Judge on questions of fact will not be disturbed unless in our opinion such findings are clearly wrong." See also Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

In the instant case the court's findings are not only supported by substantial evidence, but we think they are supported by a preponderance of the evidence, hence we cannot say that they are clearly wrong. To hold otherwise would not give proper weight to the District Court's findings on the disputed issues of fact, as required in the Keller case, supra.

The decree is affirmed.